ACCEPTED
03-15-00631-CV
8017292
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/30/2015 3:36:06 PM
JEFFREY D. KYLE
CLERK

_____

03-15-00631-CV
_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/30/2015 3:36:06 PM
JEFFREY D. KYLE
Clerk

**IN THE
COURT OF APPEALS
FOR THE
THIRD SUPREME JUDICIAL DISTRICT
OF TEXAS AT AUSTIN**

**MELISSA GATES,**
*Appellant*

**vs.**

**TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE
SERVICES AND COMISSIONER JOHN SPECIA,**
*Appellees*

**BRIEF FOR APPELLANT
MELISSA GATES**

Thomas C. Sanders
S.B.N. 17609900
P. O. Box 1860
Sugar Land, Texas  77487
281/242-9700 Telephone
281/242-8340 Facsimile
tcsanders76@yahoo.com

Robert G. Gibson, Jr.
S.B.N. 07873700
P. O. Box 387
Rosenberg, Texas  77471
713/953-0500 Telephone
713/953-0750 Facsimile
rgglaw@juno.com

ATTORNEYS FOR APPELLANT

**ORAL ARGUMENT IS REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's final judgment, as well as the names and addresses of all trial and appellate counsel.

| PARTIES | COUNSEL |
|---|---|
| **Plaintiff/Appellant** | |
| Melissa Gates | Thomas C. Sanders<br>Attorney at Law<br>P. O. Box 1860<br>Sugar Land, Texas  77487<br>281/242-9700 Telephone<br>281/242-8340 Facsimile<br>tcsanders76@yahoo.com |
| | Robert G. Gibson, Jr.<br>Attorney at Law<br>P. O. Box 387<br>Rosenberg, Texas  77471<br>713/953-0500 Telephone<br>713/953-0750 Facsimile<br>rgglaw@juno.com |
| **Appellees** | |
| Texas Department of Family and Protective Services f/k/a Texas Department of Protective and Regulatory Services and John Specia, Commissioner of Texas Department of Family and Protective Services | Ken Paxton<br>Attorney General of Texas<br><br>Charles E. Roy<br>First Assistant Attorney General<br><br>James E. Davis<br>Deputy Attorney General for Defense Litigation<br><br>Angela V. Colmenero<br>Chief, General Litigation Division |

Marc Rietvelt
Attorney-in-Charge
Assistant Attorney General
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
512/463-2120 Telephone
512/320-0667 Facsimile
Marc.Rietvelt@texasattorneygeneral.gov

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ………...……….…………ii

INDEX OF AUTHORITIES …………………………………............vi

STATEMENT OF THE CASE …………………………………........ix

STATEMENT OF JURISDICTION .…………………................................x

ISSUES PRESENTED ……………………………...….……………xi

STATEMENT OF FACTS ……………………………………………….2

    Substantive Facts …………………………………………………..2

    Procedural Facts …………………………………………............5

SUMMARY OF THE ARGUMENT ……………………………………6

ARGUMENT AND AUTHORITIES ………………………...............7

    APPELLATE STANDARD …………………………………7

        Plea to Jurisdiction ……………………….................7

    APPLYING STANDARD OF REVIEW TO THE PLEADINGS ….8

    DO THE PLEADINGS, TAKEN AS TRUE, CONFER SUBJECT MATTER JURISDICTION UPON THE TRIAL COURT? …9

        Facts pled and which must be taken as true …………..10

        Causes of action pled ………………………………14

    TRIAL COURT ERRED IN DISMISSING CASE AND DENYING MELISSA'S ATTORNEYS' FEES FOR LACK OF MOOTNESS/ SUBJECT MATTER DUE TO LIVE CONTROVERSIES ………..15

        Live Controversy as to Substantive Issues …………………15

        Live Controversy as to Attorneys' Fees …………..................17

TRIAL COURT ERRED IN FAILING TO DISTINGUISH THE DISTINCT FACTS OF THIS CASE FROM CASES APPELLEES MISTAKENLY RELIED UPON IN THEIR PLEA …………….......19

    A. *City of El Paso v. Abbott*…………………………...19

    B. *Tex. State Bd. Vet. Med. Exams v. Giggleman* ……..21

    C. *Abbott* and *Giggleman* are not on point, and thus do not establish mootness/lack of subject matter ……...22

MOOTNESS STANDARD DOCTRINE EXCEPTIONS ………….24

    Public interest exception …………………………………..24

        A.      Appellees' actions are of public importance …...24

        B.      Appellees' actions are capable of repetition and evade appellate review …………………………25

    Collateral consequences exception …………………………..26

    Capable of repetition, yet evading review exception ………..28

        A.      Challenged action was too short to be litigated fully …………………………………………….28

        B.      A reasonable expectation exists that Melissa will be subjected to the same action again ……. 29

CONCLUSION …………………………….....................................30

PRAYER ………………………………………….............................30

CERTIFICATE OF COMPLIANCE …………………………………...31

CERTIFICATE OF SERVICE …………………………………………31

APPENDIX

    Final Judgment of July 9, 2015 …………...……………..Exhibit 1

# INDEX OF AUTHORITIES

**CASES**                                                                                     **Page**

*Allstate Ins. Co. v. Hallman*,
159 S.W.3d. 640, 642 (Tex.2005) …………………………..………15

*Bland Independent School Dist. v. Blue*,
34 S.W.3d 547, 554 (Tex.2000) ……………………….......…7, 8

*Blum v. Lanier*,
997 S.W.2d 259, 264 (Tex.1999) …………………………..……..28

*Bonham State Bank v. Beadle*,
907 S.W.2d 465, 467 (Tex.1995) …………………..……………15

*Camarena v. Texas Employment Commission*,
754 S.W.2d 149, 151 (Tex.1988) ……………………………....17, 18

*City of El Paso v. Abbott*,
444 S.W.3d 315 (Tex.App.–Austin 2014, pet.
denied) ………………………………………fn. 9, 19, 20, 21,  22, 23

*City of Elsa v. Gonzalez*,
325 S.W.3d 622, 625 (Tex.2010) ………………………….....fn. 4

*City of Garland v. Dallas Morning News*,
22 S.W.3d 351, 356 (Tex.2000) ………………………………… fn. 5

*City of Houston v. Houston Chronicle Pub. Co.*,
673 S.W.2d 316, 324 (Tex.App.–Houston [1st Dist.] 1984,
no writ) …………………………………………………………fn. 5

*County of Cameron v. Brown*,
80 S.W.3d 549, 555 (Tex.2002) ..……………………………….8

*Gary W. Gates, Jr. v. Tex. Dep't of Family and Protective Services and
Anne Heiligentstein, Commissioner,* Cause No. D-1-GN-11-002300,
53rd Judicial District Court, Travis County, Texas no on appeal
to the Third Court f Appeals, Cause No. 03-13-00369-CV………fn. 7

*General Land Office v. OXY U.S.A., Inc.*,
789 S.W.2d 569, 571 (Tex.1990) ..……………….......................28

*Grand Prairie Hosp. Authority v. Tarrant Appraisal Dist.*,
  707 S.W.2d 281, 283 (Tex.App.—Fort Worth 1986, writ ref'd
  n.r.e.)…………………………………………………….........8,9

*Harris County v. Proler*,
  29 S.W.3d 646, 647 (Tex.App.—Houston [14th Dist] 2000,
  no pet.) ……………………………………………………7, 9

*Jackson v. State Office of Administrative Hearings*,
  351 S.W.3d 290, 293 (Tex.2011) ……………….……..........fn. 8, fn. 10

*James v. Hubbard*,
  21 S.W.3d 558, 560-561 (Tex.App.–San Antonio 2010, no pet.) …27

*Labrado v. County of El Paso*,
  132 S.W.3d 581, 589-90 (Tex.App.–El Paso 2004, no pet.) ………17

*Ngo v. Ngo*,
  133 S.W.3d 688, 691 (Tex.App.–Corpus Christi-Edinburg
  2003, no pet.)……………………………………………………fn. 11

*Securtec, Inc. v. County of Gregg*,
  106 S.W.3d 803, 810-811 (Tex.App.–Texarkana 2003,
  pet. denied) …….…………………………………….fn. 11, 24, 25, 26

*Spring Branch I.S.D. v. Reynolds*,
  764 S.W.2d 16, 19 (Tex.App.–Houston [1st Dist.] 1988, no writ) ...27

*State v. Lodge*,
  608 S.W.2d 910, 912 (Tex.1980) ……………………….…..27

*Tarrant County v. McQuary*,
  310 S.W.3d 170, 173 (Tex.App.-Fort Worth (2010)…………….........2

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
  852 S.W.2d 440, 446 (Tex.1993) …………………………………8

*Tex. Dep't of Parks & Wildlife v. Miranda¸*
  133 S.W.3d 217, 226 (Tex.2004)…………………………………..2

*Texas Department of Transp. v. Jones*,
  8 S.W.3d 636, 638 (Tex.1999) …………………………………7

*Tex. Natural Res. Conservation Comm'n v. IT-Davey*,
74 S.W.3d 849, 855 (Tex.2002) …………….…………………….…..7

*Tex. State Bd. Vet. Med. Examiners v. Giggleman,*
408 S.W.3d 696 (Tex.App.–Austin
2013) ……………………..……..fn. 9, fn. 10, 19, 21, 22, 23, 25, 26

*University Interscholastic League v. Buchanan*,
848 S.W.2d 298, 304 (Tex.App.–Austin 1993, no writ) ………..fn. 11

*University of Tex. Med. Branch v. Hohman*,
6 S.W.3d 767, 771 (Tex.App.– Houston  [1st. Dist.] 1999,
pet. dism'd w.o.j.) (op. on reh'g) ..………….…………………….8

*Williams v. Lara*,
52 S.W.3d 171, 184 (Tex.2001) …….……………………..…….28

## STATUTES                                                      Page

TEX. CIV. PRAC. & REM. CODE Chapter 37 (West Supp. 2014) ……… 6

TEX. CIV. PRAC. & REM. CODE § 37.002(b) (West Supp. 2014) ….…18

TEX. GOV'T. CODE ANN. § 22.220(a) (West Supp. 2014) ……….…..x

TEX. GOV'T. CODE ANN. § 22.221(a) (West Supp. 2014) ……….…..x

TEX. GOV'T. CODE ANN. § 552.001(a) (West Supp. 2014) .xi, 3, fn. 8, 29

TEX. GOV'T. CODE ANN. § 552.221(a) (West Supp. 2014) ……..fn. 6, 20

TEX. GOV'T. CODE ANN. § 552.324(b) (West Supp. 2014) .11, 12, 19, 20

# STATEMENT OF THE CASE

*Nature of the Case*:     Melissa Gates ("Melissa"), Appellant, contends that the Department of Family and Protective Services and John Specia, Commissioner of the Department of Family and Protective Services, Appellees, (collectively "Appellees") withheld timely production of documents responsive to a request made under the *Texas Public Information Act*, TEX. GOV'T. CODE ANN. § 552.001, *et. seq.* (West Supp. 2014), in order to gain a tactical advantage and/or a perceived tactical advantage in a pending registry case. CR 5-7, 9, 168-74.

*Judgment signed by*:     Honorable Lora J. Livingston. CR 446; APP.

*Trial Court*:     98th District Court, Travis County, Texas.

*Disposition at Trial*:     Appellees filed a Plea to Jurisdiction and Amended Plea to the Jurisdiction ("Plea"). CR 49-167, 267. On July 9, 2015, the trial court signed its final Order granting the Plea. CR 446, APP. Melissa filed her Motion for New Trial on August 3, 2015, which was denied by the trial court on September 23, 2015. CR 447-57, 515.

## STATEMENT OF JURISDICTION

This is an appeal of a final Order signed on July 9, 2015, granting Appellees' Amended Plea to Jurisdiction. This Honorable Court has jurisdiction over this appeal by virtue of TEX. GOV'T CODE ANN. §§ 22.220(a) and 22.221 (West Supp. 2014).

# ISSUES PRESENTED

A.  Can a member of the public be denied standing to redress/remedy when governmental actors intentionally delay in complying with the *Texas Public Information Act*, TEX. GOV'T. CODE ANN. § 552.001, *et. seq.* (West Supp. 2014), in order to gain a tactical advantage and/or a perceived tactical advantage in separate and concurring litigation?

B.  Did the trial court err in concluding that it does not have subject-matter jurisdiction due to the mootness doctrine?

_____

03-15-00631-CV

_____

**IN THE**
**COURT OF APPEALS**
**FOR THE**
**THIRD SUPREME JUDICIAL DISTRICT**
**OF TEXAS AT AUSTIN**

---

**MELISSA GATES,**
*Appellant*

**vs.**

**TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE**
**SERVICES AND COMMISSIONER, JOHN SPECIA,**
*Appellees*

---

**BRIEF FOR APPELLANT**
**MELISSA GATES**

---

TO THE HONORABLE THIRD COURT OF APPEALS:

Melissa Gates ("Melissa"), Appellant, files this brief in support of her appeal of the trial court's final Order granting the Department of Family and Protective Services' and Commissioner John Specia's Amended Plea to Jurisdiction and by way of this brief shows:

- 1 -

## STATEMENT OF FACTS

### Substantive Facts

The trial court was required to take the substantive facts pled by Melissa in her First Amended Petition for Declaratory Relief and in Plaintiff's Supplement to Plaintiff's First Amended Petition for Declaratory Relief, Injunctive Relief and Writ of Mandamus, (collectively "Petitions") as true. "We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Dep't of Parks & Wildlife v. Miranda¸*133 S.W.3d 217, 226 (Tex.2004)." *Tarrant County v. McQuary*, 310 S.W.3d 170, 173 (Tex.App.-Fort Worth (2010).

Substantive facts plead by Melissa include:

(1)   in 2011, several of Melissa's children, including her special needs daughter ("A.G.") were at the center of a DFPS investigation ("2011 Investigation"); CR 4, 172;

(2)   On October 13, 2011 (CR 223 – 226, 316-319) and October 14, 2011 (CR 208-213, 301-306) Melissa's husband wrote letters including a Public Information Request regarding the 2011 Investigation to DFPS personnel.

(3)   On October, 25, 2011, attaching Melissa's husband's October 13, 2011 and October 14, 2011 to an email, DFPS attorneys and

others scheduled a "high level review" relative to the 2011 Investigation "not so much…about specifics of these recent investigations. . .but rather how this matter ties into the overall general litigation."  CR 174, 207, 259, 264, 300[1]

(4)   or about November 7, 2012, Melissa requested specific documents and information from DFPS pursuant to the *Texas Public Information Act*, TEX. GOV'T. CODE ANN. § 552.001, *et. seq.* (West Supp. 2014), ("TPIA") in regard to the 2011 Investigation ("Melissa's Request"); CR 171, 178-79;

(5)   on or about November 20, 2012, DFPS requested an Open Records Decision of the Office of the Attorney General ("OAG") regarding Melissa's Request ("DFPS' Request"); CR 172, 182-86;

(6)   on or about January 17, 2013, the OAG responded to DFPS' Request with its Open Records Decision ("Decision") directing DFPS to turn over the requested documents and information ("Information") to Melissa; CR 172-73, 374-76;

---

[1] CR 207 and CR 300 both are the October 25, 2011 e-mail showing the attached letters. CR207-258 is Exhibit J for Plaintiff's Supplement to First Amended Petition including both letters and documents sent by Plaintiff's husband with each of those letter. Ex J is referenced in the document (CR 174) but not clearly labeled as an exhibit. It follows Ex. I, but does not have its own label as Ex. J. The same documents comprise Ex. J for Plaintiff's Response to Defendants' Amended Motion for Summary Judgment.  This Exhibit J is not only referenced in the document (CR 264), but clearly marked as Exhibit J (CR 300-351) among the other exhibits.

(7)  on or about January 22, 2013, Melissa inquired with DFPS as to when she could expect to receive the responsive Information required by the OAG's Decision. CR 5, 378;

(8)  on or about March 5, 2013, Melissa's husband, Gary, wrote to DFPS inquiring whether or not DFPS would provide the Information, and if not, then to provide the statute, rule, and/or policy under which DFPS was electing to withhold the Information in defiance to the OAG's Decision; CR 5, 31;

(9)  on or about March 12, 2013, Jonathan Miles, Open Government Attorney for DFPS, responded by advising that a mistake had been made in submitting DFPS' Request to the OAG and that DFPS would not be producing the Information; CR 5-6, 33;

(10)  on or about July 10, 2013, Melissa filed her Petition for Declaratory Relief and Writ of Mandamus; CR 55-61, 173;

(11)  on or about August 8, 2014, over twenty months after the initial submission of Melissa's Request, Appellees finally responded with document production; CR 6, 41;

(12)  on September 2, 2014 Melissa wrote to DFPS explaining that not all pages/attachments had been produced and requesting a further check by DFPS regarding those documents; CR 6-7, 42; and,

(13)   on November 25, 2014, Appellees supplemented their response by providing additional documents.  CR 7, 46-8.

## **Procedural Facts**

The following procedural facts are established by virtue of the Clerk's Record:

(1)   Appellees filed a Plea to Jurisdiction and Amended Plea to Jurisdiction (collectively "Plea") on April 28, 2015 and April 29, 2015, respectively; CR 49-167, 112-16, 267;

(2)   Melissa filed her Plaintiff's First Amended Petition for Declaratory Relief and her Plaintiff's Supplement to First Amended Petition for Declaratory, Injunctive Relief and Writ of Mandamus on April 28, 2015 and May 18, 2015, respectively; CR 3-10, 168-77[2];

(3)   on May 26, 2015, Melissa filed her Plaintiff's Response to Defendants' Amended Plea to the Jurisdiction;  CR 259-70[3];

(4)   on June 9, 2015, Melissa filed her Plaintiff's Supplement to Plaintiff's Response to Defendants' Amended Plea to the Jurisdiction; CR 432-39;

(5)   on June 11, 2015, Appellees filed their Defendants' Reply in

---

[2] Plaintiff's Supplement to First Amended Petition includes Exhibit J, (CR 207-258), the very significant October 25, 2011internal DFPS e-mail to this case referenced above.
[3] Plaintiff's Response to Defendants' Amended Plea to Jurisdiction includes Exhibit J, (CR 300-351), the very significant October 25, 2011internal DFPS e-mail to this case referenced above.

Support of Amended Plea to Jurisdiction; CR 440-45;

(6) on July 9, 2015, the trial court granted the Appellees' Plea and signed its final Order; CR 446, APP.;

(7) on August 3, 2015, Melissa filed her Motion for New Trial; CR 447-57; and,

(8) on September 23, 2015, the trial judge denied Melissa's Motion for a New Trial. CR 515.

## SUMMARY OF THE ARGUMENT

This honorable Court is required to make a *de novo* review of Melissa's live pleadings to determine whether the trial court erred in granting the Plea. In its review, this honorable Court should find the trial court erred in granting the Plea due the presence of live controversies regarding (1) whether or not Melissa should be denied standing to seek redress/remedy when Appellees intentionally delayed in complying with the TPIA in order to gain a tactical advantage and/or a perceived tactical advantage in separate and concurring litigation; and, (2) whether or not Melissa can recover attorneys' fees under the *Uniform Declaratory Judgments Act,* TEX. CIV. PRAC. & REM. CODE Chapter 37 (West Supp. 2014) ("UDJA"). Furthermore, this honorable Court should find the trial court erred in granting the Plea by failing to distinguish the troubling facts of this case from those cases that Appellees' mistakenly relied upon in

- 6 -

their Plea. Alternatively, this honorable Court should find the trial court erred in granting the Plea for lack of subject matter due to the presence of facts that sufficiently meet mootness doctrine exceptions.

## ARGUMENT AND AUTHORITIES

## APPELLATE STANDARD

### Plea to Jurisdiction

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). A trial court's subject matter jurisdiction can be contested by a plea to jurisdiction. *See Texas Department of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999) (per curium). The existence of subject matter jurisdiction is a question of law and is reviewed *de novo*. *See Tex. Natural Res. Conservation Comm'n v. IT-Davey*, 74 S.W.3d 849, 855 (Tex.2002). A plaintiff has the burden to allege facts that affirmatively demonstrate that the trial court has subject matter jurisdiction and the trial court, in deciding the issue of subject matter jurisdiction, must look solely to the allegations in the petition and must accept them as true. *See Harris County v. Proler*, 29 S.W.3d 646, 647 (Tex.App.—Houston [14[th] Dist] 2000, no pet.). In reviewing a trial court's order granting a plea to the jurisdiction, it is not the

appellate court's task to determine whether the plaintiff ultimately wins or loses upon judicial review, but to examine the petition and to take as true the facts pled. *University of Tex. Med. Branch v. Hohman*, 6 S.W.3d 767, 771 (Tex.App.– Houston [1st. Dist.] 1999, pet. dism'd w.o.j.) (op. on reh'g). The appellate courts are required to construe the pleadings in favor of the plaintiff and look to the pleader's intent when reviewing a case dismissed for lack of subject matter. *Tex. Ass'n of Bus.v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446. In deciding the issue of jurisdiction, the reviewing court is not permitted to either examine or weigh the merits of the case, but may look at the evidence only when necessary to resolve the jurisdictional issue; however, such a review must be confined solely to the issue of jurisdiction. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002); *Blue*, 34 S.W.3d at 555.

**APPLYING STANDARD OF REVIEW TO THE PLEADINGS**

To properly apply the *de novo* standard of review, this honorable Court is required to examine the facts pled in Melissa's live pleadings and to take those facts as true. *Hohman*, 6 S.W.3d at 771. To facilitate this obligation, Melissa would show that her Petitions are the operative pleadings for this Court's *de novo* review. The filings of the Petitions were timely even though they were filed subsequent to the filing of the Plea. *Grand Prairie Hosp. Authority*

*v. Tarrant Appraisal Dist.*, 707 S.W.2d 281, 283 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.).

Based upon the foregoing, this honorable Court should look to the Petitions in making its *de novo* review to determine whether the trial court has subject matter jurisdiction.

## DO THE PLEADINGS, TAKEN AS TRUE, CONFER SUBJECT MATTER JURISDICTION UPON THE TRIAL COURT?

In reviewing the Petitions, this honorable Court must simply answer the question—do the facts, as pled and taken as true, support subject matter jurisdiction in the trial court? *Proler*, 29 S.W.3d 647. If, in answering this question, this Court finds that the facts pled do indeed support subject matter jurisdiction, then the trial court's final Order granting the Plea must be set aside and this cause must be remanded.[4]

### Facts pled and which must be taken as true

The Petitions allege the following facts, which must be considered by this Court as true:

---

[4] Although this Brief does not specifically address every fact and claim pled by Melissa in her Petitions, Melissa does not intend to waive any omitted facts or claims pled in her Petitions. This Court, in its *de novo* review, is required to look at the entirety of Melissa's Petitions regardless of whether each fact and claim is specifically addressed in this Brief. In considering Melissa's Petitions, this Court must construe them liberally in Melissa's favor, look to Melissa's intent, and determine if Melissa has alleged facts affirmatively demonstrating the court's jurisdiction. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex.2010).

1.	Melissa's special needs daughter and other children were the subjects of a DFPS investigation in 2011; CR 172;

2.	Melissa's husband wrote letters on October 13, 2011 (CR 223 – 226, 316-319) and October 14, 2011 (CR 208-213, 301-306) including a Public Information Request regarding the 2011 Investigation to DFPS personnel; no responsive documents were received.

3.	On October, 25, 2011, in an internal e-mail responsive to the letters of October 13, 2011 and October 14, 2011, DFPS attorneys and other executives scheduled a "high level review" relative to the 2011 investigation to determine how this matter (the 2011 Investigation) fits into overall general litigation with the Gates family. CR 207, 300;

4.	on or about November 7, 2012, Melissa requested Information from DFPS pursuant to the TPIA under Chapter 552 of the Texas Government Code; CR 5, 12-13;

5.	the requested Information was material and could have been used to help establish the violation of Melissa's substantive right to direct the education and moral training of her daughter, A.G. and protect her other children; CR 172;

6.      the requested Information was material to help try and protect Melissa's familial integrity; CR 172;

7.      the requested Information was material to try to protect Melissa's special needs adult daughter; CR 172;

8.      concurrent to Melissa's Request, Melissa and/or her husband were involved in pending litigation with Appellees regarding the improper placement and/or retention of their names in DFPS' central registry ("Registry Case"); CR 171;

9.      on or about November 20, 2012, Appellees requested an Open Records Decision from the OAG regarding Melissa's Request; CR 172, 182-84;

10.     on or about January 17, 2013, the OAG Decision directed Appellees to release the Information to Melissa; CR 172-73, 193-95;

11.     Appellees failed to file a suit for judicial review of the OAG's Decision within the legal timeframe prescribed by TEX. GOV'T CODE ANN. § 552.324(b) (West Supp. 2014); CR 8;

12.     Appellees' failure to timely file a suit for judicial review resulted in the automatic waiver of its objections to the OAG's Decision.

TEX. GOV'T CODE ANN. § 552.324(b) (West Supp. 2014); CR 8;

13. Appellees' failure to timely file a suit for judicial review resulted in mandating Appellees' full compliance with OAG's Decision. TEX. GOV'T CODE ANN. § 552.324(b) (West Supp. 2014); CR 8;

14. on or about March 12, 2013, Appellees advised Melissa's husband that Appellees had made a mistake in requesting an opinion from the OAG regarding Melissa's Request; CR 5-6, 89;

15. on or about March 12, 2013, Appellees advised Melissa's husband that Appellees would not be producing the Information; CR 5-6, 89;

16. instead of complying with the TPIA by filing a suit for judicial review, Appellees intentionally acted extra-statutorily by asserting a different argument to Melissa's Request[5]; CR 8, 96-97;

17. Appellees refused to comply with the OAG's Decision for 21 months[6]; CR 169, 171;

---

[5] After the ten-day period prescribed for making its request to the OAG, Appellees were proscribed from invoking a different reason than that which it made to the OAG within the ten-day period. If a specific prospective right to withhold information is not presented to the OAG within ten days after the agency receives the request, "the information is presumed public." *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 citing *City of Houston v. Houston Chronicle Pub. Co.*, 673 S.W.2d 316, 324 (Tex.App.–Houston [1st Dist.] 1984, no writ).

18. Appellees refused to provide the Information responsive to Melissa's Request for 21 months; CR 169, 171;

19. Appellees violated the OAG's Decision; CR 8;

20. Appellees violated the TPIA; CR 8;

21. Appellees withheld public information, which could have been used to establish a violation of constitutional liberty interest in the Registry Case; CR 7;

22. Appellees' ignored their duty to produce public information because of their concern that the release of the Information would strengthen the Registry Case; CR 171; and,

23. Appellees withheld timely production of the Information in order to gain a tactical advantage and/or perceived tactical advantage in the Registry Case[7]. CR 5-7, 9, 168-74, 207, 259, 261-64, 300, 432-34.

---

[6] Under the TPIA, public information must be promptly produced. "'[P]romptly' means as soon as possible under the circumstances, that is, within a reasonable time, without delay." TEX. GOV'T CODE ANN. § 552.221(a) (West Supp. 2014).

[7] The referenced case deals with Texas Constitutional issues regarding the DFPS central registry. Evidence of substantive rights violated by DFPS would be important on the process owed by DFPS in maintaining questioned registry findings. In the case at hand, Plaintiff alleges that DPFS ignored its duty to produce public information because of DFPS' concerns that the release of the documents would strengthen the right to registry process claims. See *Gary W. Gates, Jr. v. Texas Department of Family and Protective Services and Anne Heiligenstein, Commissioner,* Cause No. D-1-GN-11-002300, 53rd Judicial District Court, Travis County, Texas currently on appeal to the Third Court of Appeals, Cause No.03-13-00369-CV. Oral arguments have been heard, but as of the date of this filing no decision has been rendered.

## Causes of action pled

By way of her Petitions, Melissa seeks redress for DFPS' failure to comply with the OAG's Decision and the TPIA in order to gain a tactical advantage and/or perceived tactical advantage in the pending Registry Case. [8] CR 5-7, 9, 168-74, 207, 259, 261-64, 300, 432-34. Melissa seeks declarations regarding the past violations of Appellees and a writ of mandamus and/or injunctive relief requiring Appellees to comply with the TPIA in the future.[9] CR 9-10; 174-76. Melissa additionally seeks to recover her reasonable costs of litigation and attorneys' fees incurred by her in prosecution of this action. CR 9-10.

---

[8] "[The TPIA] is aimed at preserving the fundamental tenet of representative democracy: 'that the government is the servant and not the master of the people.'" *Jackson v. State Office of Administrative Hearings*, 351 S.W.3d 290, 293 (Tex.2011) quoting TEX. GOV'T CODE § 552.001(a). "It is the policy of this state that **each** person is entitled, unless otherwise expressly provided by law, **at all times** to complete information about the affairs of government and the official acts of public officials and employees." TEX. GOV'T CODE ANN. § 552.001(a) (West Supp. 2014) (emphasis added).

[9] In effect, failure to hold Appellees accountable in this manner enables Appellees and numerous other government entities to violate with impunity a cardinal principle of the Public Information Act: timely production of documents. While case law cited by Appellees (*Tex. State Bd. Vet. Med. Examiners v. Giggleman,* 408 S.W.3d 696 (Tex.App.–Austin 2013) or *City of El Paso v. Abbott*, 444 S.W.3d 315 (Tex.App.–Austin 2014, pet. denied)) may legitimately offer freedom to produce documents at a later time and avoid liability in narrow circumstances, opening the door widely under facts such as the case at hand effectively enables Appellees and other government entities "to function in two inconsistent legal roles - those of advocate and judge." See ORD 673, p. 5. CR 201-202, 294-295. First, they act as advocate in presenting their case to the Office of the Attorney General, but then following the Attorney General's decision effectively act as judge deciding whether or not to comply in a timely manner. In the case at hand, Appellees violated the Attorney General's decision (unlike government entities in *Giggleman* or *Abbott* as explained below) for over twenty one (21) months then presented their "get out of jail free" card before a final judgment could be rendered.

**TRIAL COURT ERRED IN DISMISSING CASE AND DENYING MELISSA'S ATTORNEYS' FEES FOR MOOTNESS/LACK OF SUBJECT MATTER DUE TO LIVE CONTROVERSIES**

**Live Controversy as to Substantive Issues**

A case is moot if a controversy no longer exists or the parties lack a legally cognizable interest in the outcome. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d. 640, 642 (Tex.2005). A justiciable controversy exists if a real and substantial controversy involving a genuine conflict of tangible interests is present. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995).

A live controversy continues to exist as to whether or not Appellees can withhold prompt production of public information for tactical litigation purposes, and later claim the courthouse is closed to Melissa due to mootness. CR 5-7, 9, 168-74, 207, 259, 261-64, 300, 432-34. More specifically Melissa has requested declarations as to whether:

1. Appellees can violate the TPIA for tactical litigation purposes; CR 5-7, 9, 168-74, 207, 259, 261-64, 300, 432-34;

2. Melissa can be denied standing to seek redress/remedy for Appellees' violation of the TPIA for tactical litigation purposes; CR 5-7, 9, 168-74, 207, 259, 261-64, 300, 432-34;

3. a claim of sovereign immunity can bar Melissa from access to the courthouse when the facts pled by Melissa state that the

government actors defied/ignored the TPIA and OAG's Decision for tactical and/or perceived tactical litigation purposes; CR 5-7, 9, 168-74, 207, 259, 261-64, 300, 432-34;

4. Melissa's husband can be denied standing to seek redress/remedy for Appellees' violation of her due process/due course of law right to being heard in a meaningful way in the pending Registry Case; CR 4-5, 7-10, 169, 171, 174-75, 432-434, 447-48, 453;

5. Melissa can be denied standing to pursue redress/remedy for Appellees' violation of Melissa's due process/due course of law right to fundamental fairness; 4-5, 7-10, 169, 174-75, 432-435;

6. Melissa can be denied standing to pursue redress/remedy for Appellees' failure to promptly produce Information that was material to try and protect Melissa's substantive right to direct the education and moral training of her daughter; CR 4, 172, 175, 263, 433;

7. Melissa can be denied standing to pursue redress/remedy for Appellees' failure to promptly produce Information that was evidence useful to help try and protect Melissa's familial integrity; CR 4-5, 172, 175, 263, 433-34; and,

8.     Melissa can be denied standing to pursue redress/remedy for Appellees' failure to promptly produce Information that could have contributed towards determining her constitutional claims regarding the retention or removal of her name in the central registry. CR 5, 7, 171-75, 262-63, 437, 447, 456.

Since Melissa has pled that she has legally cognizable rights, the trial court erred in dismissing the case as moot. Melissa's live pleadings establish subject matter jurisdiction; and therefore, the trial court's final judgment should be reversed and must be remanded for consideration and determination.

**Live Controversy as to Attorneys' Fees**

Additionally, a live controversy exists as to whether or not Melissa has a legally cognizable interest in recovering her attorneys' fees. CR 7-10; 169-71; 433; 438; 453. *See Camarena v. Texas Employment Commission*, 754 S.W.2d 149, 151 (Tex.1988) (held that case was not moot due to the existence of the live issue of attorney's fees); *see also: Labrado v. County of El Paso*, 132 S.W.3d 581, 589-90 (Tex.App.–El Paso 2004, no pet.).

Melissa has pled for recovery of her attorneys' fees under the UDJA. CR 7-10, 174, 438. The purpose of the UDJA "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." TEX. CIV.

- 17 -

PRAC. & REM. CODE § 37.002(b) (West Supp. 2014). Melissa's Petitions affirmatively allege that Appellees interfered with Melissa's legal rights and/or privileges by refusing to release public information that could have been used in the Registry case to establish violations of substantive due process right and constitutional liberty interests; CR 4-5, 7, 171-175, 262-63, 433, 447-48; therefore, Melissa is entitled to seek declaratory relief, including the recovery of her attorney fees', under the UDJA.[10]

Appellees' interference with Melissa's legal rights and privileges, including her right to recover attorneys' fees as a result of Appellees' calculated violation of the TPIA for 21 months are integral parts of Melissa's claims; and therefore, prevent this case from being moot. *See Camarena* 754 S.W.2d at 151.

---

[10] In their argument for denying Melissa's attorneys' fees, Appellees' point to the rulings in *Tex. State Bd. Vet. Med. Examiners v. Giggleman,* 408 S.W.3d 696 (Tex.App.–Austin 2013) and *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290 (Tex.2011)(holding that Plaintiff seeking relief falling squarely under TPIA cannot seek attorneys' fees award under UDJA). CR 114. In both *Giggleman* and *Jackson*, however, the governmental entities operated within the legal parameters of the TPIA by relying on OAG decisions. *Giggleman*, 408 S.W.3d at 699; *Jackson*, 351 S.W.3d at 292. The undisputed fact that Appellees' violated the TPIA by spurning the OAG Decision and refusing to promptly produce the Information, delaying the production for 21 months solely for tactical litigation purposes distinguishes this case from *Giggleman* and *Jackson*. CR 170-74. Appellees' violation of the TPIA interfered with and violated Melissa's legal rights to due process/due course of law. CR 4, 171-75. Therefore, it is proper for Melissa to seek recovery of her attorneys' fees under the UDJA.

## TRIAL COURT ERRED IN FAILING TO DISTINGUISH THE DISTINCT FACTS OF THIS CASE FROM CASES APPELLEES MISTAKENLY RELIED UPON IN THEIR PLEA

Appellees rationalized their actions and established their mootness argument by relying on two TPIA cases: *City of El Paso v. Abbott*, 444 S.W.3d 315 (Tex.App.–Austin 2014, pet. denied) and *Giggleman*, 408 S.W.3d 696. CR 52, 114-15, 169-171, 441-43. Appellees' calculated withholding of public information in this case is radically distinct from the cooperative government conduct evident in both *Abbott* and *Giggleman*. Melissa's live pleadings reveal a bright line distinction between this case and the rationale of *Abbott* and *Giggleman*. CR 169-71.

### A. *City of El Paso v. Abbott*

In *Abbott*, the City sought an opinion from the OAG to determine if it must release specific information. *Abbott*, 444 S.W.3d at 318. The OAG determined the information should be released to the requestor; the City then timely filed a suit seeking judicial review of the OAG's opinion pursuant to TEX. GOV'T CODE ANN. § 552.324(b). *Id*. During the pendency of the judicial review, the City withdrew its challenge and voluntarily produced the information per the OAG's ruling. *Id*. at 319. The *Abbott* Court held that the City was not "refusing" to supply information that the OAG had determined was public information, and therefore, under the principles of sovereign

immunity, the district court lacked subject matter jurisdiction. *Id*. at 322, 324, 327.

The *Abbott* Court held that a governmental entity waives its sovereign immunity for mandamus under the TPIA when it "refuses" to supply public information. *Id.* at 324. "'Refuse' in this context means to 'show or express a positive unwillingness to do or comply with.'" *Id.* (quoting *Webster's Third New Int'l Dictionary* 1910 (2002)). After obtaining an unfavorable opinion from the OAG, Appellees, unlike the City in *Abbott*, "refused" to operate within the structure of the legal process (1) by wholly failing to file a suit for judicial review or (2) by promptly producing the requested information. TEX. GOV'T CODE ANN. §§ 552.324(b) and 552.221(a) (West Supp. 2014); CR 8, 169-71. Melissa's Petitions further establish that Appellees showed a "positive unwillingness" to comply by (1) spurning the OAG's Decision; CR 8, 89; (2) violating the TPIA; CR 8, 89; and, (3) withholding the requested documents for 21 months in order to gain a tactical advantage and/or a perceived tactical advantage in the Registry Case. *See Abbott* at 324. CR 5-7, 9, 168-74, 207, 259, 261-64, 300, 432-34. Melissa's Pleadings effectively demonstrate that Appellees' waived their sovereign immunity for mandamus by "refusing" and showing a "positive unwillingness" to comply with TPIA.

**B.** *Tex. State Bd. Vet. Med. Exams v. Giggleman*

Appellees' Plea requested the trial court to extend the *Giggleman* rationale to this case; however, like *Abbott*, the *Giggleman* facts are markedly distinct from the facts in this case. CR 52-53, 169-71, 259, 261, 435, 441-43, 448, 451-53.

In *Giggleman*, the Texas State Board of Veterinary Medical Examiners ("Board") sought an opinion from the OAG regarding whether certain exhibits, as confidential documents, were exempt from disclosure. *Giggleman*, 408 S.W.3d at 699. The OAG, unlike in the present case, decided the exhibits were protected and did not have to be disclosed to Giggleman. *Id.* Giggleman then filed suit seeking a writ of mandamus to compel the agency to release the exhibits and to recover attorney fees under the UDJA. *Id.* at 699-700. Both parties submitted summary judgments regarding Giggleman's mandamus claim. *Id.* at 700. The district court granted Giggleman's summary judgment and denied the Board's. *Id.* Prior to a final hearing, the Board, consistent with the court's decision, produced all the exhibits Giggleman had originally sought. *Id.* at 702. The appellate Court later held that the district court lacked subject matter jurisdiction to grant Giggleman's claims for attorney fees. *Id.* at 709.

Relying on the *Giggleman* rationale and by way of their Plea, Appellees assert that Melissa should be denied attorneys' fees and her case should be dismissed for mootness because all the Information has been 'voluntarily' released. CR 114-15. The trial court, however, failed to delineate, unlike *Giggleman*, in which the government entity "reasonably relied on Attorney General decisions in withholding" the requested information (*Id*. at 699, 701), that Appellees knowingly violated the OAG Decision and TPIA by refusing to release the Information for 21 months in order to gain a tactical advantage and/or a perceived tactical advantage in the Registry Case. CR 5-7, 9, 168-74, 207, 259, 261-64, 300, 432-34. Melissa's Petitions establish that Appellees' actions adversely affected Melissa and violated her constitutional rights to fundamental fairness and being heard in a meaningful way in the pending Registry Case. CR 3-5, 7-10, 170-72, 174-75.

**C. *Abbott* and *Giggleman* are not on point, and thus do not establish mootness/lack of subject matter jurisdiction**

Appellees' Plea wrongly relies on *Abbott* and *Giggleman* to support the mootness claim. In both *Abbott* and *Giggleman,* the government entities operated within the legal parameters of the TPIA; however, Melissa's Petitions specifically demonstrate in the present case that Appellees:

(1)    expressed a "positive unwillingness" to promptly release the Information; CR 169-171;

(2)    failed to seek judicial review of the OAG's decision; CR 8;

(3)    failed to promptly release the Information; CR 169, 171;

(4)    waived its objections to the OAG's decision; CR 8;

(5)    acted extra-statutorily by asserting a different argument to Melissa's Request; CR 8, 96-97;

(6)    violated the OAG's decision; CR 8;

(7)    violated the TPIA; CR 8;

(8)    delayed the release of Information to gain a perceived tactical advantage in the Registry Case; CR 5-7,  9, 168-74, 204-205, 207, 259, 261-64, 300, 432-34;  and,

(9)    adversely affected Melissa. CR 3-5, 7-10, 170-72, 174-75.

Melissa's Petitions reveal the stark factual difference between the case at bar and *Abbott* and *Giggleman*, the cases relied upon by Appellees in their Plea. The trial court failed to recognize the critical  difference between the facts of this case and the facts of *Abbott* and *Giggleman*, differences over which the trial court has subject matter jurisdiction.  Accordingly, the trial court's judgment should be reversed and must be remanded for further consideration and determination.

## MOOTNESS STANDARD DOCTRINE EXCEPTIONS

Alternatively, Melissa asserts the existence of the following recognized exceptions to the mootness standard doctrine: (1) the public interest exception; (2) the collateral consequences exception; and/or (3) the capable of repetition yet evading review exception. CR 434-38, 448, 454-55. These applicable exceptions, singularly or collectively, confer subject matter jurisdiction upon the trial court.

### Public Interest Exception

The public interest exception "allows appellate review of a question of considerable public importance if that question is capable of repetition between either the same parties or other members of the public, but for some reason evades appellate review."[11] *Securtec, Inc. v. County of Greg*, 106 S.W.3d 803, 810-811 (Tex.App.–Texarkana 2003, pet. denied).

### A. Appellees' actions are a matter of public importance

The trial court failed to recognize that Appellees' actions are a matter of public importance since the public is afforded the rights to public documents under the TPIA. The avenue available to the public for obtaining

---

[11] Though the Texas Supreme Court has yet to rule on the viability of the public interest exception, multiple Texas appellate courts already recognize the public interest exception. *See University Interscholastic League v. Buchanan*, 848 S.W.2d 298, 304 (Tex.App.–Austin 1993, no writ); *Ngo v. Ngo* 133 S.W.3d 688, 691 (Tex.App.–Corpus Christi-Edinburg 2003, no pet.); and, *Securtec, Inc. v. County of Gregg*, 106 S.W.3d 803, 810-811 (Tex.App.–Texarkana 2003, pet. denied).

public documents is governed by the TPIA. The fact that Appellees, as a governmental body, are duty-bound to follow the TPIA is a matter of public interest. The *Securtec* court in recognizing the public interest exception held the exception applicable "because Gregg County is a governmental body that is required to follow the Texas Local Government Code when accepting bids for construction contracts." *Id.* at 811. Like *Securtec*, this case is a matter of public importance because Appellees, like Gregg County, comprise a governmental body that is mandated to follow the TPIA in releasing information to members of the public.

### B. Appellees' actions are capable of repetition and evade appellate review

Appellees' actions are capable of repetition between Melissa and/or other members of the public who seek to address public interest questions or obtain information by way of the TPIA. CR 260-61, 436. Members of the public could easily find themselves in the same position as Melissa should Appellees refuse to release public information until a convenient time and then play the "mootness doctrine" card, thus rendering all declaratory actions and attorney fee claims against them as moot, and ultimately, evading appellate review. Procedurally the impact of *Giggleman* as argued by Appellees would yield the same result: the government body may initially submit a request to the Attorney General, but if it does not like the

response, simply choose to hold onto the documents indefinitely, causing prolonged litigation and then at a time that it determines to be opportune, *i.e.* just before a dispositive hearing, turn over the documents. In effect it acts as both advocate and judge.

The trial court's granting of Appellees' Plea has the ultimate effect of evading appellate review of the Appellees' unlawful actions. This same issue was recognized and address by the *Securtec* court.

> It is possible future parties could find themselves in the same position as Gregg County and Securtec because the performance of a similar construction contract may likely occur before adjudication of a similar suit. ... Therefore, despite the contract for the Gregg County jail having already been performed, we will address whether summary judgment was appropriate. *Id.*

Like *Securtec*, the facts of this case sufficiently meet the public interest exception requirements of (1) public importance; (2) capable of repetition; and, (3) evasion of appellate review. *Id.* at 810-811. Therefore, the trial court erred in concluding that none of these exceptions apply.

**Collateral Consequences Exception**

The "collateral consequences" exception applies when "prejudicial events have occurred whose effects continued to stigmatize helpless or hated individuals long after the unconstitutional judgment had ceased to operate. Such effects were not absolved by mere dismissal of the cause as moot."

*Spring Branch I.S.D. v. Reynolds*, 764 S.W.2d 16, 19 (Tex.App.–Houston [1ˢᵗ Dist.] 1988, no writ).

Melissa has pled that Appellees' refusal to comply with the OAG Decision and "positive unwillingness" to promptly release the Information effectively prevented Melissa from accessing documents responsive to the Registry Case. CR 169-74, 199. Appellees' refusal to release the Information allowed Appellees to continue stigmatizing Melissa by withholding documents that could have contributed towards determining her constitutional claims regarding the retention or removal of her name in DFPS' child-abuse registry. *See James v. Hubbard*, 21 S.W.3d 558, 560-561 (Tex.App.–San Antonio 2010, no pet.) (Court held that case was not moot because expired protective order based on family violence carries a significant social stigma.) CR 7, 171-74, 199, 437, 456. It goes without saying that having one's name in the state child-abuse registry carries a significant social stigma. Appellees' refusal to comply with the OAG's decision and failure to promptly release the Information have adversely affected Melissa's collateral constitutional claims making this case anything but moot. *See State v. Lodge*, 608 S.W.2d 910, 912 (Tex.1980). CR 174-75, 433-34.

The facts pled in this case sufficiently meet the collateral consequences exception of the mootness doctrine. Therefore, the trial court erred in granting Appellees' Plea in light of this exception.

**Capable of Repetition yet Evading Review Exception**

The 'capable of repetition, yet evading review' entails two elements: "(1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex.2001); *see also General Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex.1990); *Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex.1999). The capable of repetition yet evading review exception is applicable to challenges of unconstitutional acts undertaken by governmental entities. *OXY U.S.A., Inc.*, 52 S.W.3d at 571.

**A. Challenged action was too short in duration to be litigated fully**

Appellees simply refused to timely comply with the OAG Decision and expressed a "positive unwillingness" to promptly release the Information in order to gain a tactical advantage in the Registry Case. CR 4-7, 9, 168-76, 199, 204-05, 207, 259, 261-264, 300, 432-434. Melissa, with no other available recourse, challenged Appellees' violation of the TPIA. CR 173. Twenty-one months after the OAG Decision, Appellees

"voluntarily" released the requested Information, which resulted in the granting of the Plea. CR 6, 41, 169-71. Between the time that Appellees' "voluntary" released the Information and the granting of the Plea did not give Melissa the time necessary to litigate her claims fully. Accordingly, the trial court erred in allowing Melissa time to fully litigate her claim.

## B. A reasonable expectation exists that Melissa will be subjected to the same action again

It can be reasonably expected that Melissa will be subjected to the same action in the future. CR 260-61, 436, 455. Melissa has a legal right to request information under the TPIA, and there is nothing to dissuade Appellees from (1) ignoring OAG decisions; (2) refusing to abide by OAG decisions; and, (3) avoiding any declaratory action and/or attorney fees by eventually "voluntarily" releasing the requested information when they deem necessary for their own benefit. Without allowing Melissa to fully litigate Appellees' unlawful actions, the trial court is giving Appellees a "green light" to continue this untoward behavior on future requestors under the TPIA, a "green light" that runs counter to the spirit of the law that "this chapter shall be liberally construed in favor a granting a request for information." TEX.GOV'T CODE §552.001

The facts pled in this case fulfill both elements of the 'capable of repetition, yet evading review' exception to the mootness doctrine. Therefore, the trial court erred in deeming Melissa's claims as moot.

## CONCLUSION

Upon the conclusion of its *de novo* review of Melissa's Petitions, this honorable Court should reach only one conclusion—that the trial court erred in granting Appellees' Plea.

## PRAYER

For these reasons, Melissa requests that upon this honorable Court's *de novo* review of her Petitions, that the trial court's final Order granting Appellees' Plea be reversed and that this cause, in its entirety, be remanded to the trial court for further proceedings and for such other and further relief to which Melissa may be justly entitled.

Respectfully submitted,


By:/s/ Thomas C. Sanders
Thomas C. Sanders
S.B.N. 17609900
P. O. Box 1860
Sugar Land, Texas  77487
281/242-9700 Telephone
281/242-8340 Facsimile
tcsanders76@yahoo.com

Robert G. Gibson, Jr.
S.B.N. 07873700
P. O. Box 387
Rosenberg, Texas 77471
713/953-0500 Telephone
713/953-0750 Facsimile
rgglaw@juno.com

ATTORNEYS FOR APPELLANT,
MELISSA GATES

CERTIFICATE OF COMPLIANCE

This certifies, pursuant to TEX. R. APP. P 9.4(i)(3), that this Brief has been computer-generated and that the total word count calculated by the computer used to generate those sections of this Brief as required by TEX. R. APP. P 9.4(i)(1) is 6309 words.

/s/ Thomas C. Sanders
Thomas C. Sanders

CERTIFICATE OF SERVICE

This certifies that the undersigned served this Brief of Appellant on the Texas Department of Family and Protective Services and John Specia, Appellees, by e-serving lead counsel for Appellees, Marc Rietvelt, Office of the Attorney General, General Litigation Division (Marc.Rietvelt@texasattorneygeneral.gov), on November 30, 2015.

/s/ Thomas C. Sanders
Thomas C. Sanders

# EXHIBIT 1

Filed in The District Court
of Travis County, Texas

JUL - 9 2015

At _____9:30_____ A. M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-13-002324

| | | |
|---|---|---|
| MELISSA GATES, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| TEXAS DEPARTMENT OF FAMILY | § | |
| AND PROTECTIVE SERVICES AND | § | |
| COMMISSIONER JOHN SPECIA, | § | |
| *Defendants.* | § | 98TH JUDICIAL DISTRICT |

## ORDER ON DEFENDANTS' AMENDED PLEA TO THE JURISDICTION

After considering Defendants' *Amended Plea to the Jurisdiction*, the Plaintiff's response,

any relevant pleadings and other filings, as well as hearing the arguments of counsel, the Court

**GRANTS** the *Amended Plea to the Jurisdiction.*

SIGNED on ___July 9___, 2015.

JUDGE LORA J. LIVINGSTON

AGREED AS TO FORM:

MARC RIETVELT
*Attorney for Defendants*

THOMAS SANDERS
*Attorney for the Plaintiff*

*Melissa Gates v. TDFPS and*
*John Specia*
# EXHIBIT 1
Appellant's Brief

004109415

